Thank you, Your Honor. Good morning. My name is Matthew Dietz, and I represent the appellant Marquice Morris. With me at counsel table is my colleague, Assistant Federal Defender Aaron Morrison, who is counsel at trial for Mr. Morris. I will begin my argument this morning with the obstruction of justice enhancement. And to the issues pertaining to sufficiency of the evidence at trial to prove conspiracy, as well as the motion for a new trial under Rule 33. The district court committed reversible error when it imposed a two-level guidelines enhancement for obstruction of justice. The district court imposed this enhancement based entirely upon the conduct of third parties, not Mr. Morris. This court has emphasized that this enhancement requires the government prove some form of direct or active participation on the part of the defendant with respect to the obstructive conduct. The two primary cases from this court are United States v. Regs from 2018, as well as United States v. Mann from 2012. Importantly, these cases show that a defendant's mere acquiescence or even knowledge of a third party's obstructive conduct is not sufficient for this enhancement. The government must prove the defendant's willful intent to obstruct. Here the government failed its burden of proof because the government failed to show any action on the part of Mr. Morris with respect to the government's proffered obstructive events. The first proffered obstruction were two payments on the part of Mr. Morris' girlfriend to Mr. Morris' co-defendant, Brandon Johnson, while Mr. Johnson was detained pending trial. The government did not show that Mr. Morris ordered these payments, directed these payments, or even was aware of these payments. If this evidence had existed, it would have been relatively straightforward for the government to obtain it. The government could have reviewed recorded phone conversations between Mr. Morris and his girlfriend because Mr. Morris was also in pretrial detention at this time. The government is very familiar with the procedures that it must undertake to get recorded phone conversations from the pretrial detention facility, in this case, county jail. The government also could have reviewed correspondence, letters, any other written communication between Mr. Morris and his girlfriend during this time to try to show any sort of active or direct participation on the part of Mr. Morris. But if the government obtained this evidence, it certainly didn't present it to the district court. In fact, the government failed to show any direct or active involvement on the part of Mr. Morris with respect to these payments. Can the court rely on circumstantial evidence or reasonable inferences? The court can, Your Honor. The district court can rely on evidence, but the evidence just was not there. The government did not show any part, any action on the part of Mr. Morris with direct involvement. Direct involvement, you know, that's an interesting thing. They do show they were in the same unit, and they do know that they spoke with some regularity. They did show that the person that approached Johnson was Morris' girlfriend, now wife, and the approaches were made, including an affidavit, right? And so that's a sequela of circumstantial evidence that, you know, shows something, right? And the question is, is it sufficient to constitute evidence of direct involvement, right? And we always allow inferences to be drawn by juries arising out of intimate relationships, and I guess you're arguing here that whatever it is, it's all speculation and that this relationship alone does not, and the ability that for these two to be in communication within a unit, that that's not enough. Correct, Your Honor. The government certainly showed direct conduct on the part of Mr. Morris' girlfriend. She is the one that actually made the payments. But there was nothing about Mr. Morris' actions, conduct, statements, intent, nothing on his part that the government showed the district court. There were other people in the same unit, and there's no information about how Mr. Morris' girlfriend learned about Mr. Johnson's pretrial detention at this facility. The government, it appears, did not bother to interview her. They did not call her to testify at the sentencing hearing. They really got no information from her. And so they're relying on the act of a third party, the girlfriend, without any evidence with regard to Mr. Morris' intent. And Riggs is essentially on point here. Riggs dealt with a similar enhancement under 3C1.2, the reckless endangerment during flight. And in that case, three co-conspirators robbed a home. And in the midst of fleeing from that robbery, one of the co-defendants was driving while Riggs, the appellant in that case, was merely a passenger. And at sentencing for Riggs, the district court tried to impose an enhancement under 3C1.2 for the conduct of the co-defendant, the driver. And this court said that obviously Riggs was aware of the co-defendant's conduct. He was in the same car. He saw what was happening. And he even might have had a similar intent as the driver to get away from the robbery. All three of them had done the same crime, so presumably all three of them wanted to get away from that crime. But that was not enough to attribute the driver's conduct to Riggs because the government did not show any action on the part of Riggs to either bring about the driver's conduct, to encourage the driver's conduct, nothing. And that's essentially what we have here. We have a third party who the government said engaged in obstructive conduct, and we have a defendant who the government has said nothing about. That's essentially what happened in Riggs. As for the affidavits, the government's second category of proffered obstructive conduct is an affidavit that Mr. Johnson also signed while he was in pretrial detention in this case. Mr. Johnson testified at Mr. Morris's trial about this affidavit. He said that at a certain point in March 2023, an unknown, unidentified gentleman approached him in the pretrial detention facility and had him sign this affidavit that supposedly exonerated Mr. Morris. Mr. Johnson did not know who this third party was. He didn't even know his name. He offered that perhaps the name was Cash, but there was no specific name that was offered by the government. The affidavit itself is also interesting because Mr. Morris's name is listed twice in this affidavit as Marquis Morris, but it's misspelled. His first name, Marquis, is spelled with a C, while the name in the affidavit is spelled with an S. And so to the extent that the district court believed that this affidavit somehow showed Mr. Morris's involvement in this affidavit, the fact that his name is misspelled detracts from that finding and in part shows that the district court clearly erred. The government did not try to identify this unidentified person who tried to get Mr. Johnson to sign the affidavit. It appears they didn't ask Mr. Johnson many questions about it, didn't try to figure out who was also in this pretrial detention facility at the time, who was in the same unit as Mr. Johnson. They really did not undertake any investigation to try to support their enhancement. Because of the government's failure of proving any evidence, the district court was left to speculate, and the district court's analysis on this enhancement highlights the significant gaps in the record. For instance, the district court said with respect to the affidavit that it's, quote, highly unlikely that one of Mr. Morris's fellow detainees would approach Mr. Johnson with a completely filled out affidavit exonerating Mr. Morris unless Mr. Morris was involved. This is speculation. It's conjecture. It's guessing. There's no evidence to show Mr. Morris was involved. And in fact, the district court clearly erred when it said that one of Mr. Morris's fellow detainees is the one who approached Mr. Johnson to sign this affidavit. The government put on evidence at trial with respect to where Mr. Morris and Mr. Johnson were detained at this pretrial facility. We have a full record of where each of these two men were at this facility during the events in question. The person who approached Mr. Johnson was one of Mr. Morris's, quote, fellow detainees because government's trial exhibits C-8 and C-9 show that Mr. Johnson and Mr. Morris were not housed together in the same unit in March 2023 when this event took place. The remedy would be resentencing on this? Yes, Your Honor. We're asking What would the revised range be in your view? Your Honor, it would be two levels off. The range, I don't have the range off the top of my head. The district court, for reasons under 18 United States Code He got a 45-month below range sentence. He did, Your Honor. And that was So does 190 months fit in the revised range? I don't have that off the top of my head, Your Honor. I apologize. That's usually pretty important. I apologize, Your Honor. I will say, though, that under Molina-Martinez, if the district court erred in calculating the guideline range, that this court should vacate the sentence and remand for resentencing. We also ask that this court direct the district court to limit its resentencing to the record already before it the first sentencing. And that is supported by regs, as well as a 2011 Eighth Circuit case, United States v. Thomas, which recognizes that the ordinary rule It's hardly normal. United States v. Thomas They've refused to do that at least as often as we've done it. Understood, Your Honor. But United States v. Thomas says that the normal rule in the Eighth Circuit is that when the government already had a full and fair opportunity to develop the record at the first sentencing hearing, the normal rule is that the government should not be allowed to have a second bite at the apple. What year was Thomas? 2011. There's been a lot of water over this dam since then. It was also cited in United States v. Regs, which is a 2018 case. The same thing. Unless there are any other questions, I will reserve the remaining portion of my time for questions. Matthew Forbes Good morning, Your Honors. I'm Matthew Forbes, and I represent the United States in this matter, and I was also trial counsel in the district court in this case. I'd like to also address the obstruction issue and some of the arguments from Mr. Dietz. The first I'd like to cover Nothing else is available. Yes, Your Honor. Correct. The, I'd like to first address some of the facts in the record and then the law. First, Mr. Morris argues that there's no evidence of Mr. Morris's direct involvement in the obstruction. That's incorrect, Your Honor. It wasn't specifically called out in the briefs, but in addendum page 21 shows a cover letter that Mr. Johnson attached to the false affidavit when he sent the affidavit to his counsel. And in that cover letter, in the second line, Mr. Johnson wrote to his counsel, Marquis Morris had wanted me to write an affidavit. That's the evidence of Mr. Morris's direct involvement in the obstruction and rebuts the argument from Mr. Morris's counsel. But second, going beyond the issue of direct involvement, there's more. There are some of the facts that Judge Erickson identified earlier in the argument, but there's more in the record as well. As Judge Erickson noted, Chief Judge Schultz found that it was Mr. Morris's girlfriend, at the time now wife, who made the payments to Mr. Johnson. And that girlfriend, evidence in the case showed that that girlfriend had made earlier acts and further into the drug conspiracy. And specifically, two things that I would identify. First, that Johnson's bus ticket from Arizona to Minnesota when he rode the bus back, it was purchased by Ms. Gave, the girlfriend. And it was sent to Mr. Johnson by Morris, suggesting that Ms. Gave purchased the bus ticket, gave it to Mr. Morris, and then Mr. Morris gave it to Mr. Johnson. That was an exhibit in the record before the trial court. It was Exhibit B3. It was cited in Chief Judge Schultz's order at addendum page 12. Bank records from Ms. Gave's bank account were also introduced at trial. That was Exhibit C12. And they showed that she purchased that bus ticket. The second act that Ms. Gave engaged in was buying Mr. Morris's flight home. While Mr. Johnson took the bus home, Mr. Morris flew home on a flight comfortably from Arizona. That was in the record. Gave's bank records were in the trial court record at C12, Government Exhibit C12 at page 17. And so if the court had evidence that the girlfriend had engaged in acts involved in the conspiracy earlier, it was perfectly reasonable for the court to infer that when Mr. Morris's girlfriend was making payments to Mr. Johnson in the jail, that she was also, again, acting on Mr. Morris's behalf. Now I'd like to turn to some of the legal issues with respect to the obstruction. The first here is Mr. Morris's argument comes dangerously close to suggesting that a defendant cannot be held liable for obstructive acts unless they themselves directly engage in the obstructive acts. And that's incorrect. And the guidelines are explicit on this matter. The section of the guidelines is section 3C1.1. And there's a commentary application note, note number 9. And it explicitly says that a defendant is accountable not only for the acts that they commit under that section, but also for acts that a defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused. That's the language of acts, obstructive acts committed by other people, third people, where a defendant can be held liable for them. And I want to talk about circumstantial evidence. This is when circumstantial evidence can be relied upon. And not only was it not legal error for Chief Judge Schiltz to consider circumstantial evidence, but it may have invited legal error for him not to. Just yesterday, the Court issued an opinion in United States v. Le Moyne, another drug case out of this district, where a judge, where the district court did not adequately consider circumstantial evidence, and the Court ruled, an opinion from Judge Erickson, the Court must treat circumstantial evidence no differently than direct evidence. That's what Chief Judge Schiltz did here in finding that Mr. Morris engaged in obstruction, and he did so properly. I want to ask something that's unrelated to where you're at in your argument, because I forget it if I don't ask it now. And it is this, is that, you know, if these two points don't apply for obstruction, then we're at 34 and 3 anyhow, right? And isn't the sentencing guideline range under 34 and 3, 188 months to 235 months? And so this sentence that sits at 190 months is, you know, certainly, if not quite at the low end of the correct guideline range, if defendant is right, it's certainly at the longer than the low end. That sounds correct, Your Honor. I don't know the direct answer to your question, sitting here today. Thank you. I'd also like to just note one other aspect about this inferences that district judges draw when facing the obstruction issue at sentencing. This often pops up, and it often pops up in a different context. Specifically, it pops up when defendants call alibi witnesses that juries reject their testimony. So, for example, in cases where a defendant calls an alibi witness or two, and the alibi witness says, I was with the defendant at the time of the crime, he wasn't there, the government puts on other evidence saying the defendant was there, and therefore, the alibi witness's testimony is false and perjury, and the jury adopts the argument of the government and implicitly finds that the alibi witnesses are lying and committing perjury. In that context, it's common, based on nothing other than the defendant put on alibi witnesses that perjured themselves for district judges to apply the obstruction of justice enhancement and for appellate courts to affirm that finding. And the case that I would cite to you is a decision from Judge Harvey Wilkinson out of the Fourth Circuit, United States v. Andrews, and it's 808 F. 3rd. 964. And that's a case where a defendant suspected of robbery called two alibi witnesses saying, hey, I was with the evidence saying he committed the robbery, and the jury delivered a guilty verdict, and the district judge, based on nothing else, no evidence that, you know, that the defendant had, you know, met with the witnesses or anything like that, the judge inferred that the defendant must have procured the perjurer's testimony from the alibi witnesses. Although in that case, there would be direct evidence that they made the conscious decision to put them on the stand knowing that their testimony would be false. So that's pretty direct. That's correct, Your Honor. There is the evidence that the defendant called the witnesses. That's correct. And then last, Your Honor, Your Honors, I just want to identify a quick point that, you know, the suggestion from Mr. Morris's counsel that the government did not review the jail calls, that the government did not try to interview anybody, did not try to ID cash. Defense doesn't know what the government did or did not do in its investigation. All it knows is the tactical and strategic decisions of what evidence that the government decided to put on at trial, which, of course, includes, you know, being persuasive and winning the case, but also incorporates things like efficiency and judicial economy and... It's neither here nor there. We have to take what's in the record. That's... Yes, Your Honor. And give whatever significance may be appropriate to what isn't in the record. That's correct, Your Honor. My point is simply that the reflection that it's not in the record is not a reflection on what the government did or did not do in the course of its investigation. And with that, Your Honors, subject to any remaining questions from the points, and I would respectfully request that the Court affirm the judgment below. Thank you. Thank you. Thank you. I want to begin with the government's point about page two of the defendant's addendum, Mr. Johnson's cover letter, where he wrote, Marquis Morris wanted me to write the affidavit. Now, Mr. Johnson did not testify to that fact at trial. While this cover letter was introduced as an exhibit by the government, the government did not ask Mr. Johnson to repeat that statement under oath. So this is a hearsay statement that Mr. Johnson did not later repeat at trial. Could you consider hearsay at sentencing? I don't have any rule against that, Your Honor. But the point is, is that the government did not elicit this information from Mr. Johnson when he was under oath. They did not recall him at the sentencing hearing to try to support this enhancement. And, in fact, the district court did not even include consideration of this statement in the cover letter in its decision to apply the enhancement. This Court should not consider that statement. The government also talks about different conduct that Mr. Morris' girlfriend did throughout this case. Again, this is just Mr. Morris' girlfriend's conduct. The government says nothing about what Mr. Morris did with respect to these proffered objects. You know, but that – Mr. Morris' girlfriend, then, is a co-conspirator based upon those statements. And then the acts of a co-conspirator and furtherance of the conspiracy are deemed to be the acts of the other actors and other people involved in the conspiracy, right? And the question that I've got here is that all of a sudden you're looking at a situation as well. Is trying to get a reduced sentence still part of the conspiracy, or would that have to be a totally new conspiracy, right? I don't believe so, Your Honor. And the government provides no Eighth Circuit authority for its position on that point. Okay. Hold on. Wait a minute. I'm not sure that your answer is exactly what my question was. The question is, is the conspiracy that is alleged to have existed where Mr. Morris' girlfriend made approaches in order to reduce the sentence a separate conspiracy than the conspiracy that the underlying charges for which all these people are co-defendants on? I don't believe that there's a second conspiracy. I mean, to prove a second conspiracy with regard to the sentencing. Well, if there's only one conspiracy, is the conspiracy continuing to be ongoing in the obstruction of justice? I don't think so. Or does it end upon the arrest? And if so, do you have a case that says that? No, Your Honor. And even assuming that there might have been a conspiracy, which I don't concede, there's no evidence that Mr. Johnson or Mr. Morris joined some sort of conspiracy to reduce his sentence. There's no evidence of his conduct, no evidence of his willful intent. Yeah, well, that's not the issue. The issue is, is what does Morris' girlfriend do on behalf of Mr. Morris? That's the conspiracy, right? It's not what Johnson's doing at that point. The conduct is the conduct in furtherance. That's why I'm asking, because I could get your argument if you're saying there had to be two conspiracies, that whatever the underlying criminal conduct that originally led to the indictment, that that conspiracy, whatever Mr. Morris' girlfriend's role in that was, that was ended, right? And whatever this new thing is, that's something new. It's a new thing and it's separate. But when you say there's only one conspiracy, then I'm kind of concerned that maybe it's all still hanging around and still going on. Your Honor, clearly the girlfriend is operating under some sort of intent on her own part. There's, to the extent that she's her own independent actor here doing her own thing behind the scenes. That's a contradiction in conspiracy terms. I mean, she's a co-conspirator, acting in pursuit of what the conspiracy's doing. And then that gets us right back to regs, where we had co-conspirators in a robbery. One co-conspirator decides to do obstructive conduct, flee, but that's not imputable to the other members without any direct active involvement by them. Did you have a chance to look at the sentencing guidelines grid? I did not, Your Honor. Thanks. I take you at your word. And just on that point, the district court decided that Mr. Morris should get a reduction, a downward variance based on 3553A. And that gets to Molina-Martinez, where the guidelines are an anchoring point. If this Court reverses the district court's imposition of the obstruction enhancement, we'll have a lower guideline range. Your time's up. Thank you.